*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0165**

State of Minnesota,
Respondent,

vs.

Wade Joseph Novak,
Appellant.

**Filed December 29, 2025**
**Affirmed**
**Johnson, Judge**

Mower County District Court
File No. 50-CR-23-1087

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Michelle M. King, Assistant County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

A Mower County jury found Wade Joseph Novak guilty of impersonating a peace officer based on evidence that he used flashing lights on his vehicle to cause another vehicle to stop. We conclude that the evidence is sufficient to support the conviction. Therefore, we affirm.

## FACTS

On the afternoon of May 27, 2023, J.J. and S.S., who live in Wisconsin, were in the city of Austin visiting relatives. They decided to go to a Culver's restaurant, where they intended to buy food at the drive-through window. While driving there, they noticed a customized license plate on a red Ford Mustang in front of them. Soon thereafter, the red Mustang was driving behind them, with flashing white lights on the dashboard and one blinking headlight. J.J. and S.S. believed that the driver of the red Mustang was trying to cause them to pull over. J.J., who was driving a white Chevy Equinox, said to S.S., "I think that car's trying to pull us over." J.J. continued driving until he reached the Culver's but did not go to the drive-through window; instead J.J. stopped in the parking lot and rolled down his window.

The red Mustang pulled up next to J.J.'s driver's-side window and stopped. The driver of the red Mustang, later identified as Novak, flashed a badge and said to J.J. and S.S., "In this state we drive 30 miles an hour," and "the radar said you were going closer to 40." J.J. asked Novak if the red Mustang was an official police vehicle, and Novak said, "It's a detective vehicle." Soon thereafter, Novak drove away. After buying their food, J.J. and S.S. stopped at a police station, where they told police officers that they were "pulled over by a person that was in civilian clothes saying they were a detective" and asked whether the person was "a real detective."

The state charged Novak with impersonating a peace officer, in violation of Minn. Stat. § 609.4751, subd. 2(2) (2022). The case was tried to a jury on two days in May 2024. The state called four witnesses, including J.J., S.S., and the officers who arrested Novak

and searched his red Mustang. The state also introduced exhibits consisting of photographs of Novak's red Mustang, the vehicle's lights, and Novak's badge.

At trial, Novak testified in his own defense, as follows. He is a co-founder and chapter president of an organization called Never Alone Principal Defenders Outreach Organization, Inc., which supports persons recovering from addiction. The chapter officers of the organization carry badges inscribed with the organization's name. His red Mustang has a customized license plate: NAPD4FN. The vehicle is equipped with strobe lights, mounted on the front dashboard and in the rear window, which flash white and amber lights. Novak uses the lights to warn other drivers when he is stopped on the side of a road helping another motorist.

Novak testified further that, on May 27, 2023, he was driving to a store when he saw a white SUV "coming up fast" in his rearview mirror. Novak testified that the white SUV passed him and cut off another vehicle. Novak testified that he saw the white SUV turn into a Culver's and saw the driver roll down his window and wave at him, which made him believe that the driver wanted to talk to him. Novak testified that he pulled up next to the white SUV in the Culver's parking lot and told the driver that he had cut off multiple drivers, that he was "going fast," at least "35, 40 miles an hour," and that "in Minnesota, the speed limit's 30." Novak denied using the flashing lights on his vehicle, having radar in his vehicle, showing his NAPD badge, and saying that he was a police officer.

The jury found Novak guilty. The district court imposed a sentence of 364 days in jail but stayed the execution of all but four days of the sentence and placed Novak on probation for two years. Novak appeals.

3

## DECISION

Novak argues that the evidence is insufficient to support his conviction of impersonating a peace officer.

To determine whether evidence is sufficient to support a conviction, this court undertakes "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient." *State v. Jones*, 977 N.W.2d 177, 187 (Minn. 2022) (quotation omitted). We "carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the factfinder to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Waiters*, 929 N.W.2d 895, 900 (Minn. 2019) (quotation omitted). We assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Friese*, 959 N.W.2d 205, 214 (Minn. 2021) (quotation omitted).

The offense of impersonating a peace officer may be either a misdemeanor, a gross misdemeanor, or a felony. Minn. Stat. § 609.4751. A person is guilty of a misdemeanor if the person "falsely impersonates a peace officer with intent to mislead another into believing that the impersonator is actually an officer." *Id.*, subd. 1. A person is guilty of a gross misdemeanor if the person engages in the conduct constituting a misdemeanor and, "without legal authority, direct[s] or order[s] another person to act or refrain from acting." *Id.*, subd. 2(2). Novak was charged with and convicted of a gross-misdemeanor offense.

Novak does not challenge the sufficiency of the evidence that he engaged in conduct that constitutes a misdemeanor. Rather, he challenges the sufficiency of the evidence that

4

makes his crime a gross-misdemeanor. He contends that, for three reasons, the state's evidence is insufficient to prove beyond a reasonable doubt that he directed or ordered J.J. and S.S. to act or refrain from acting.

First, Novak contends that he did not direct or order J.J. and S.S. to act or refrain from acting because they stopped at Culver's, as they had planned. But J.J. and S.S. testified that their plan was to go to the drive-through window to buy food, not to stop in the parking lot. By stopping in the parking lot and interacting with Novak instead of driving directly to the drive-through window, J.J. and S.S. refrained from acting in the way they had intended to act.

Second, Novak contends that he did not direct or order J.J. and S.S. to act or refrain from acting because he did not tailgate them, did not honk his horn, and did not point or gesture for them to pull over and stop. No evidence was introduced that such actions are necessary or typical when peace officers make traffic stops. But the state called a police officer who testified that, when he initiates a traffic stop, he positions himself behind the vehicle and turns on his emergency lights to indicate to the driver that he is conducting a traffic stop. Most importantly, both J.J. and S.S. testified that they believed that the flashing lights on Novak's red Mustang indicated that the driver of the red Mustang was trying to pull them over. J.J. testified on cross-examination that he believed that he was being asked to pull over because "lights behind me usually mean pull over."

Third, Novak contends that he did not direct or order J.J. and S.S. to act or refrain from acting because the lights on his vehicle were permitted by law and did not indicate that his red Mustang was a law-enforcement vehicle. *See* Minn. Stat. §§ 169.17, 169.59,

5

subd. 4, 169.64, subds. 1, 4, 4(b) (2024). The state responds that Novak was not charged with displaying prohibited lights and that Novak's compliance with vehicle-lighting statutes does not absolve him of criminal liability for impersonating a peace officer. The state is correct. The impersonating-a-peace-officer statute does not require that a person commit the offense by using any particular type of equipment, such as equipment reserved for law enforcement. *See* Minn. Stat. § 609.4751. Novak does not cite any caselaw for the proposition that the lawful use of vehicle lights necessarily precludes a finding of guilt, and we are unaware of any such authority. The evidence shows that Novak used flashing lights on his car while driving behind J.J.'s and S.S.'s white SUV, which caused them to believe that Novak wanted them to pull over and stop instead of continuing to drive to their intended destination.

Because each of Novak's arguments fails, the evidence is sufficient to prove not only that Novak "falsely impersonate[d] a peace officer with intent to mislead another into believing that the impersonator is actually an officer" but also that he, "without legal authority, direct[ed] or order[ed] another person to act or refrain from acting." Minn. Stat. § 609.4751, subds. 1, 2(2). The offense was complete when J.J. and S.S. stopped their white SUV in the Culver's parking lot, short of the drive-through window. Consequently, we do not rely on the evidence of Novak's actions and statements while both vehicles were stopped in the Culver's parking lot.

In sum, the evidence is sufficient to support Novak's conviction of the gross-misdemeanor offense of impersonating a peace officer.

**Affirmed.**